## Iafolla Estate.

Argued October 6, 1954.    Before STERN, C. J., STEARNE, JONES, CHIDSEY and ARNOLD, JJ.

*Edwin B. Goldsmith,* for appellant.

*Albert A. Fiok,* for appellees.

OPINION BY MR. JUSTICE JONES, January 3, 1955:

Antonio Iafolla died testate on May 14, 1951, leaving to survive him his wife, Maria, otherwise known as Mary, and four children by a prior marriage. His last will, executed on September 13, 1934, was duly pro-

bated. After providing for the payment of his debts and funeral expenses, the testator devised and bequeathed his entire estate to his wife, Maria, whom he named executrix of his will and to whom letters testamentary were granted. The size of the net estate does not appear from the record before us, but, from what was said by counsel at bar, it was relatively small exclusive of two bank accounts which are the subject matter of the current controversy as hereinafter related.

At the time of the testator's death, two bank accounts, aggregating approximately $11,500, stood in his name in trust for three of his four children by his prior marriage. He had opened the first of these accounts in his individual name in the Washington Trust Company of Pittsburgh some time in 1930. On August 7, 1947, he changed the title of this account to himself as trustee for the indicated children of his prior marriage, namely, John, James and Josephine. On September 9, 1948, he withdrew accumulated interest in the amount of $187.54 from this account which, at the time of his death, had a credit balance of $4,407.50. The decedent opened the second account on August 7, 1947, in the Peoples First National Bank and Trust Company of Pittsburgh in his name as trustee for his children, John, James and Josephine. The balance in this account at the time of the testator's death was roundly $7,000.

The widow elected, pursuant to Section 8 of the Wills Act of 1947, P.L. 89, 20 PS § 180.8, to take against her husband's will and elected under Section 11 of the Estates Act of 1947, P.L. 100, 20 PS § 301.11, to treat the two tentative trust bank accounts as testamentary dispositions by her husband so far as her legal rights in his estate were concerned. On the widow's petition, the court below issued a citation to the two banks and to the three beneficiaries of the tentative

trusts to show cause why they should not pay over to Maria, as executrix of her husband's will, one-third of the funds on deposit in the trust accounts for distribution to her as the decedent's widow. The answer of the Peoples First National Bank and Trust Company admitted the existence of the account in the decedent's name as trustee for his designated children but averred that the funds had been paid over to the children as beneficiaries of the trust shortly after the testator's death. The answer of the Washington Trust Company admitted the existence of the trust account in its keeping and averred that it still held the same. The answer of John and James Iafolla similarly admitted the existence of the account and further alleged that by the widow's execution and delivery of releases and authorizations of January 16, 1952, she had thereby released and authorized both banks to make payment of the funds in the trust accounts to the children named as the beneficiaries thereof and that, by reason of the releases and authorizations, the widow had effectively waived any rights which she may have had under the Estates Act of 1947, supra.

The widow died intestate in June, 1952, survived by two daughters of a prior marriage. Victor L. Baker was appointed administrator of her estate. In his representative capacity, he was allowed by the court below to intervene in the proceedings and is the present appellant.

In an opinion by President Judge BOYLE, the learned court below held that the releases and authorizations signed and delivered by the widow extinguished or relinquished whatever rights in the trust accounts that she might have had as Antonio Iafolla's widow; and a decree in accordance therewith was entered to which the administrator of Maria's estate filed exceptions. The court en banc dismissed the exceptions with-

out an opinion; and, from the final decree entered, the administrator took this appeal.

As the above-recited facts disclose, the trusts in question were created after the passage of the Estates Act but before the specified effective date of the Act, while the settlor did not die until after the effective date of the Act.

Counsel for the widow concedes, without discussion, that "her election under Sec. 11 of said Act gave her no interest in the two savings accounts which were created before . . . the effective date of the Act. . . ." He contends, however, that under the common law the corpus of a tentative trust created by a decedent forms part of his estate at the time of his death for the purpose of computing the quantum of the distributive share of his surviving spouse under the intestate law. There is no Pennsylvania appellate court decision supporting this view, although there is one lower court case so holding: see *Black Estate,* 73 D. & C. 86 (O.C. Delaware Co.). The appellant relies on § 58 of the Restatement, Trusts, comment cc (1948 Supp.), where it is stated that "the surviving spouse of a person who makes a savings deposit upon a tentative trust can reach the deposit"; and, also, Bregy, Pennsylvania Intestate, Wills and Estates Acts of 1947, at p. 5859, to the effect that "Other situations where an inter vivos transfer of personalty might be regarded as testamentary as to the surviving spouse even without the aid of the [Estates Act of 1947] are tentative trusts. . . ." That such property is available to the surviving spouse, the author deemed reasonable to suppose on the analogy of cases holding that tentative trusts are testamentary as to creditors, citing *Banca D'Italia & Trust Company v. Giordano,* 154 Pa. Superior Ct. 452, 455, 36 A. 2d 242, where a tentatively trusteed savings fund was

held to be attachable by a creditor of the depositor who was still living.

We have directly held Section 11 of the Estates Act of 1947 not to be retroactive: *McKean Estate*, 366 Pa. 192, 195, 77 A. 2d 447. Hence, the *res* of an inter vivos trust created prior to the effective date of the Act cannot be reached by the settlor's surviving spouse, as being a testamentary disposition, even though the settlor by the trust indenture expressly reserved the right to revoke or modify it. The beneficial interests in such a trust are vested from the time of its creation. However, a difference, if not a crucial legal distinction, may be noted between a formally created inter vivos trust subject to the reserved right of the settlor to revoke it and a tentative trust, that is, one that by its very nature is provisional during the lifetime of the settlor. The type first above-mentioned may be destroyed only by a positive act of the settlor (viz., revocation) which may never occur, while the tentative type requires a positive act (viz., death of the settlor), which is bound to occur, to effectuate it. It may, therefore, be argued that, as to tentative trusts created prior to the effective date of the Estates Act but whose settlors did not die until after the effective date of the Act, Section 11 actually controls prospectively. By its terms, Section 11 applies "to conveyances effective on and after" its own specified effective date. Consequently, until the death of the settlor of a tentative trust the beneficial interest is a mere expectancy and not vested. Otherwise, if vested, creditors of the settlor could not attach the trust *res* as his property. But, with any or all of that we need not now be concerned.

Assuming, without deciding, that the two tentative trust bank accounts of the decedent were testamentary as to his surviving spouse and, therefore, subject to her intestate interest in his estate, she relinquished and

surrendered whatever right she may have had in the bank accounts by the authorizations and releases which she executed and delivered to the respective banks on January 16, 1952. Thereby, she authorized and directed the banks to pay over the balances in the accounts to John, James and Josephine Iafolla, the beneficiaries of the then effectuated trusts, and expressly waived any right she may have, have had, or have in the future by virtue of Section 11 of the Estates Act of 1947 as the surviving spouse of the depositor of the bank accounts. We find no merit in any of the reasons advanced by the appellant why the widow's authorizations and releases to the banks were ineffectual to bar her or her personal representative from claiming an interest in the proceeds of the bank accounts. We agree with the learned court below that the releases fully comported with the intendment of Section 3 of the Estates Act of 1947 and, accordingly, constituted valid releases.

Decree affirmed at appellant's costs.