547 So.2d 199 (1989)
Lillian SERPA, Appellant,
v.
NORTH RIDGE BANK, Appellee.
No. 88-0009.
District Court of Appeal of Florida, Fourth District.
June 21, 1989.
Rehearing Denied August 31, 1989.
Catherine Rafferty of Miller, Squire & Rafferty, Chartered, Fort Lauderdale, for appellant.
Michael Beraha of Kross, Rader & Beraha, P.A., Boca Raton, for appellee.
HERSEY, Chief Judge.
The issue we are asked to review is whether a will revoked a Totten trust.
In 1980, Efrain Ramos opened a savings account with North Ridge Bank. The signature card indicates the title of this account as "RAMOS, EFRAIN I/T/F LILLIAN RAMOS." Appellant, Lillian Serpa, formerly Lillian Ramos, is the daughter of Efrain Ramos.
Efrain Ramos died in 1982, leaving a will executed after the account was established, and providing, in pertinent part:
Fourth: all the rest, residue and remainder of my estate, real, personal or mixed, whatsoever situated, of which I may be or become entitled including stock ownership, my home, bank accounts, certificates of deposit, time-sharing arrangements, I give to my brother, Eddie Ramos, which he will distribute to his sole discretion to my family I may have in Puerto Rico, and to my daughter Lillian Ramos.
Upon request of the attorney for the estate of Efrain Ramos, the bank paid over to the estate the contents of the account in question, as well as an amount in a checking account owned by the decedent.
Appellant eventually learned of the existence of the savings account and the manner of its disposition. Her suit against the bank for breach of contract and negligence resulted in an unfavorable final judgment from which she appeals.
The judgment itself is silent as to the reasoning underlying the trial court's decision. At the conclusion of the hearing, however, the trial judge explained his rationale in the following language:
Here, I rule for the bank, because I otherwise would presume that the decedent at the moment he made his Will, was incompetent. A person who makes a Will, and when he makes a Will, and if he's competent, and knows and understands the bounty of his labors and the people to whom he wants that bounty to pass upon his death. (sic)
So, the specific language of the Will making reference to bank accounts combined with the presumption that the decedent was competant (sic) at the time he made the Will gives rise to the presumption in this Court's mind that he knew of the intrust (sic) status of the bank account and decided to revoke it by making *200 the Will. This is not to say that every Will revokes a Totten Trust. If the residue clause had said I give, devise, the rest, residue and remainder of my estate, you would have been in trouble. But, here, the specific reference to the bank accounts is enough to lead this Court to believe that that accompanied with the presumption of competency of the decedent that he knew what the account was in existence. He knew the condition of the account being one in trust for that. He sought to specifically revoke that status and that account passed under his Will and into his estate.
Placing a bank account in the name of one individual "in trust for" another individual creates a tentative or Totten trust. Such a trust is tentative because partial revocation occurs every time there is a withdrawal, and the trust is revocable during the lifetime of the depositor/settlor. See In re Totten, 179 N.Y. 112, 71 N.E. 748 (1904). The Totten trust is cognizable in Florida, both as a product of the common law, Seymour v. Seymour, 85 So.2d 726 (Fla. 1956), and as a legislatively permissible device, section 658.58, Florida Statutes (1987).
The purpose and operation of Totten trusts was described by the Totten court as follows:
In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.
71 N.E. at 752.
It has become settled law that a Totten trust "can be revoked by a provision of the depositor's valid will which either specifically makes a different disposition of the trust funds or gives rise to the implication that a revocation of the trust was intended to be accomplished." See Jones v. First National Bank of Rome, 142 Ga. App. 18, 234 S.E.2d 794, 796 (1977), and cases there cited. The will must clearly evidence an intention to revoke the trust, and language of a general nature such as "I give any and all funds on deposit to my credit, in any bank or trust company or similar financial institution" has been held insufficient to manifest the requisite intention to revoke. In re Estate of Krycun, 24 N.Y.2d 710, 249 N.E.2d 753, 754-55, 301 N.Y.S.2d 970, 972-73 (1969). The Krycun court also cautioned, however, that the existence of particular circumstances might have changed the result. 249 N.E.2d at 755, 301 N.Y.S.2d at 972.
Reference in a will to an interest in "mortgages, notes and cash on hand in Banks and in my safe deposit box" was found to be insufficient to revoke a Totten trust in In re Estate of Schuck, 419 Pa. 466, 214 A.2d 629, 631 (1965). The court explained: "A tentative trust may be revoked, among other means, (1) by oral declarations of the depositor, or (2) by facts and circumstances resulting in inadequacy of the estate assets to satisfy the testamentary gifts, funeral and administration expenses, taxes and other charges." 214 A.2d at 631-32 (citations omitted).
No evidence was introduced below of any oral declarations or special circumstances. The trial court's finding is supported only by the reference in the will to "my ... bank accounts."
We hold that a general reference in a will to "bank accounts," without more, is not a sufficient indication of the testator's intention to revoke a Totten trust. We therefore reverse.
REVERSED AND REMANDED.
DOWNEY and ANSTEAD, JJ., concur.