The opinion of the Court was delivered by
Gibson J.
The motion-to quash the writ of error must be refused. The Act authorised an appeal to a common law jurisdiction; and where that is the case, if there be no particular mode of proceeding pointed out, the proceedings are understood to be according to the course of the common law. Here they are actually so. An issue of fact was formed, and submitted to a jury, who gave a verdict, on which judgment was rendered, and.it is therefore impossible to say the proceedings are not the subject of a writ of error. The judgment of a Court of Common Pleas, on a certiorari to remove the proceedings of justices under the Landlord and Tenant Act, or the Act to give pósséssion to purchasers at Sheriff’s *419 sale, may be reversed on error brought to the Supreme Court : yet the proceedings were not at first according to the common law. I proceed therefore to consider the errors assigned.
The first is an exception to the charge of the Court; who were .requested to instruct the jury that the mortgage executed by the plaintiff below, together with James Thoburn, and Wood, to Krickbaum, (only part of which was paid,) and the mortgage, executed by the plaintiff alone, to Stoddart, and by the latter assigned to the Bank of Pennsylvania, precluded "the plaintiff from recovering damagesor at most, only as far as the damages actually sustained, should exceed the amount due on these mortgages, which, it was contended, should be deducted and reserved to answer the claims of the mortgagees, who were to be considered as the legal, and to the amount of their interest, the equitable owners of the land. Formerly the law was so. . The possession of the tenant in mortgage was viewed';.at law, as that of a tenant at sufferance, with perhaps a slight shade or two of difference. I am not aware however that' this view was. ever entertained in Pennsylvania: unquestionably it has not been since the passing, of the Act of 1705, which authorises the mortgagee to proceed, by scire facias, against the land and have it sold ; but the mortgagor has, as in equity, been treated as the real owner to all intents, as respects third persons : and, even as to the mortgagee, the debt has been considered the principal, and the land only as a pledge, for which the mortgagor could maintain an ejectment on tender of what was due. This doctrine which, though not expressly established by decisions directly on the point, has been glanced at in Wentz v. Dehaven, 1 Serg. & Rawle 312, and the Lessee of Simpson v. Ammons, 1 Binn. 175, is not peculiar to Pennsylvania. In New York, where the jurisdiction of the Chancellor' is as distinctly separated from that of the common law Courts as it is in England, the mortgagor is considered, for all purposes as to third persons, to be seised of the legal estate. In Hitchcock v. Harrington, 6 Johns. 290, C. J. Kent, delivering the opinion of the Court, says : “ it’is now the settled law in this Court, and the same principle has been recognised in the Court for the correction of Errors, that the mortgagor is to be deemed seised, notwithstanding the mort *420 gage, as to all persons except the mortgagee and his representatives. When his interest is not in question, the mortgagor before foreclosure, or éntry under the mortgage, is considered, at law, as the owner of the land." The same principle is móre distinctly asserted in Collins v. Torry, 7 Johns. 277. Sedgwick v. Hollenback, ib. 376. Runyan v. Mersereau, 11, Johns. 534. Stanard v. Eldridge, 16 Johns. 254, and it may fairly be deduced from Tabele v. Tabele, 1 Johns. Cha. Rep. 45. Even in England it is not clear that the law is hot held so at the present day. Here there- was no interference of the mortgagees; but if there even had been, it could not have arrested the proceedings before judgment. Whatever claim (if any) they had to the,damages, could be enforced only on motion to take the money out of Court.
The second error assigned depends on the construction to be put on the tenth ,section of the Act of the 8th of March, 1815, by which the Schuylkill Navigation Company was incorporated-. The defendants requested the Court to direct the jury, that injury done to- the property could alone be taken-into consideration in estimating the damages, and not any injury that the plaintiff might have suffered in his, business, in consequence' of the dam, which was the subject of ,the action. The Court gave no opinion on the point raised by the distinction submitted ; but repeated the substance of the- section on which the question turns ;■ and then instructed the jury that the intrinsic value of the damages, without reference to circumstances that might induce the' plaintiff to estimate the amount of the injury sustained more highly than a stranger would think reasonable, was the standard by-which they ought to be governed. If therefore the charge should, on the point submitted, have been in the defendants’ favour, there is error. The tenth section provides: “That if any person shall be injured by means of any dam being erected as herein after mentioned, or the land of any person inundated by the swelling of the water in consequence of the erecting of any dam ; or any mill or other water works • injured by swelling the water into the tail race of any mill or other water works, which may have been erected on said river, or any stream of water .emptying Into the same, and if the President Managers and Company cannot agree with the *421 owner thereof, on the compensation to be paid for such inJury, the same proceedings shall be had ás is provided in the eleventh section of this Act.” The section thus referred tp directs the mode of redress by the appointment of men, or by ... , -r», i an application to the Common. Pleas or the proper county, The material inquiry is: at'ivhat point of time were the jury to estimate the damage as having beer suffered ? Indisputably, at the time when the injury complained of was compíete; W’hich was the moment the dam was finished ; or rather, when the obstruction, by swelling the water, permanently produced its most injurious consequences. The principle, that the extent of an injury at the time it is suffered, is to govern the compensation to be' received, without regard to enhancement from subsequent circumstances, is familiar and applicable to all cases, which I at present recollect, where • compensation is to be made in damages. In cases of eviction of a vendee for want of title in ibe vendor, the value the land when it was conveyed, as ascertained by the price paid (which is the value affixed by the parties themselves,) is the measure of damages on a covenant of warranty. So in an action on a contract for the delivery, at a day specified, of goods purchased—the damages are to be estimated by the value of the article on the day of delivery, and’are not to be affected by any adventitious rise of the market, between that and the day of bringing the suit. Now here the- injury to be redressed was One done to the realty ; but altogether unlike a nuisance, for the continuance of which repeated actions may be brought, in each of which, damages may be recovered for the time intervening between the inception of the preceding suit, and the impetration of the writ in the cause which is then tried. The compensation was to be prospective, as well as retrospective ; but to be estimated with reference to the time when the injury was committed. It was in fact to be. the price of a privilege to swell the water to particular height for an indefinite time. Now this price was due the moment the privilege was entered upon,'and the price could be ascertained ; which was obviously, the time when the obstruction was first completed. The jury were therefore to ascertain what was then due ; and'the amount clearly could not be enhanced, or in any way affected, by sub *422 sequent injuries, the consequences of the obstruction. How. far the omitting- to instruct the jury to this effect .may have operated on the amount of the compensation assessed, I am. unable to say,, as the bills of exceptions contain no more of the evidence than is absolutely necessary to an understanding of the points submitted 5 but as the particular injury to •the plaintiff, in his business as'a manufacturer, was necessarily subsequent to the erection, and as the defendant prayed-the direction of the Court on the legal effect of the evidence relating to that part of the.case, he was entitled to have it; for so far it would have operated in his favour. The tenth section of the ninth article of the Constitution declares, that no man’s property shall be taken or applied to public use, without the consent of his representatives, and without just compensation being made but to let in considerations that are only collateral to the assuming of the rights of the citizen,would, in this instance, carry the principle of compensation,, even beyond' the constitutional injunction. It is- evident that the profit, in any branch of manufactures, must- mainly depend on the amount of capital invested, the number of workmen employed, and the extent of the business carried on; but it would be plainly unjust to put it in the power of the plaintiff, by an increase .of all these, to-an amount beyond What the demand for'the manufactured .article would justify, to charge .the defendant in the same proportion for the injury sustained by the impeding of his works in his business thus extended, as for a loss in his ordinary mode of carrying xt on: that would make the. defendant an insurer of ordinary profits in a new state of the business,' pushed to a morbid extent, and would put it in the power of the plaintiff to increase the damages to any extent he might think proper. .1 mention this to shew the danger of taking into consideration circumstances posterior to the time when the privilege is fully entered on, and its consequences, to the .individual to be compensated, are ascertained. The jury are to consider the matter just as if they were called on to value the injury at the moment when compensation could first be demanded: they are to value the injury to.the property, without reference to the person of the owner, or the actual state of his business; and in doing that, the. only safe rule is, to inquire what *423 would the property- unaffected by the obstruction have sold for, at the time the injury was committed? what would it havt sold for as affected by the injury? The difference is the true measure of compensation. ' . A
Judgment'reversed, and a venire facias de T10V0 awarded.