406 A.2d 524

**ESTATE of William KOTZ a/k/a F. William Kotz a/k/a Frederick William Kotz, Deceased (two cases).**

**Appeal of Virginia KOTZ.**

**Appeal of Mary A. KOTZ.**

Supreme Court of Pennsylvania.

Submitted April 16, 1979.

Decided Oct. 1, 1979.

Raymond B. Reinl, Willow Grove, Bucks County, for Virginia Kotz.

Michael J. O'Neill, Jr., Renninger, Spear & Kupits, Doylestown, Bucks County, for Mary A. Kotz.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

There cases are before the court on cross appeals of Virginia Kotz, sister of decedent, William Kotz, and Mary A. Kotz, widow of decedent, from the order and decree of September 8, 1977, of the Court of Common Pleas, Orphans' Division, of Montgomery County. This order permitted the widow to claim the family exemption and determined property held by decedent and his sister, Virginia Kotz, as joint tenants with right of survivorship, was subject to a widow's election against conveyances. The order further determined that the joint tenancy was not severed by a mortgage executed by decedent and his sister.

### I. No. 677—Appeal of Virginia Kotz

Virginia Kotz seeks our review of that portion of the September 8 order permitting Mary A. Kotz to include property located at 14 Warminster Road, Hatboro, Pennsylvania, for purposes of her widow's election. Mary Kotz has filed a motion to quash the appeal because of the failure of Virginia Kotz to file exceptions to the September 8, 1977 order and decree.

### A. Motion to Quash

■ The facts pertinent to this issue are: On June 21, 1976, Mary Kotz filed a notice that she intended to elect to take against all conveyances by her husband to which she was not a party. The notice specified the property at 14 Warminster Road, Montgomery County, This property had been owned by decedent and his sister, Virginia Kotz, as joint tenants with right of survivorship since 1959, eight years prior to the marriage of decedent and Mary Kotz.

On August 26, 1976, Mary Kotz filed a petition for citation, returnable on September 24, 1976, to show cause why the Warminster Road property should not be included in the estate or otherwise subject to the election of the surviving spouse. Mary Kotz also filed a petition for family exemption and a petition for allowance to the surviving spouse.

On September 21, 1976, Virginia Kotz filed an answer to the August 26, 1976, petition. On November 5, 1976, a hearing was held on the petition to include the Warminster Road property in the estate and the propriety of the election by the surviving spouse against that property. The presiding judge at the hearing was the Honorable Benjamin Sirica. Judge Sirica died prior to issuing an order or decree in this case and subsequently Judge Alfred Taxis heard oral argument on the petitions. On September 8, 1977, Judge Taxis issued an "Opinion and Decree sur petitions for family exemption and for allowance of spouse's election under § 6111, PEF Code." *Kotz Estate*, 103 Montg. 120, 4 D & C 3d 85 (1977). The Orphans' Court determined that the joint tenancy with right of survivorship was not severed by a mortgage taken by both tenants and, therefore, the Warminster Road property was not includable in the probate estate of William Kotz. The court further determined that the widow could elect to take against the Warminster Road property. No exceptions by either party were filed. Virginia Kotz appealed to this court at No. 677 January 1977 and Mary Kotz appealed to this court at No. 691 January 1977. In October, 1977, Mary Kotz filed a motion to quash the appeal of Virginia Kotz.

Mary Kotz argues that the appeal of Virginia Kotz should be quashed because of the failure of Virginia Kotz to file exceptions to the September 8, 1976, "order and decree" entered by Judge Taxis. We deny the motion to quash. The failure to file exceptions does not affect the appealability of an order; rather, the lack of exceptions fails to preserve issues for appellate review. *Estate of McGrorey*, 474 Pa. 402, 378 A.2d 855 (1977).

B. Waiver

■ Mary Kotz argues, as an alternative to quashing the appeal, the issues raised by Virginia Kotz are not preserved for appellate review because of the failure to file exceptions to the September 8 order and adjudication. We do not agree.

Section 7.1 of Pennsylvania Orphans' Court Rules provides:

"Exceptions shall be filed at such place and time, shall be in such form, copies thereof served and disposition made thereof as local rules shall prescribe."

This rule clearly allows the Orphans' Court of different judicial districts to determine when and how exceptions are to be filed. This court, therefore, sanctioned different procedures to be utilized throughout the Commonwealth.

Two other rules of procedure promulgated by this court are necessary to analyze and decide this issue.

Section 3.1 of Pennsylvania Orphans' Court Rules provides:

"Except where otherwise provided by a rule adopted by the Supreme Court, or by an Act of Assembly, or by general rule or special order of the local Orphans' Court, and except for the Notice to Defendant required by Rule of Civil Procedure 1018.1, which form of notice shall be required only if directed by general rule or special order of the local Orphans' Court, the pleading and practice shall conform to the pleading and practice in equity in the local Court of Common Pleas." Amended November 24, 1975, effective January 1, 1976.

Rule 1518 of Pennsylvania Rules of Civil Procedure provides:

"Within ten (10) days after notice of the filing of the adjudication, exceptions may be filed by any party to rulings on objections to evidence, to statements or findings of fact, to conclusions of law, to the decree nisi or in cases where requests for findings of fact or conclusions of law have been submitted by leave of court to a failure or refusal to find any matter of fact or law substantially as requested. Each exception shall set forth a separate objection precisely and without discussion. Matters not covered by exceptions are deemed waived, unless, prior to final decree, leave is granted to file exceptions raising these matters."

The applicable Montgomery County Local Rule of Court provides:

"Local Rule 7.1A Exception to Decrees—Generally.

"No exceptions shall be filed to orders or decrees entered in proceedings unless the right to except thereto is expressly conferred by act of assembly, by general rule, or by special order; and all decrees other than those to which exceptions are so allowed to be taken, shall be final and definitive."

The local rule provides that exceptions shall be filed only in those orders where the right to file exceptions is conferred by:

1. Legislative enactment.
2. General rule of court, i. e. the Pennsylvania Orphans' Court Rules adopted by the Supreme Court; and
3. By special order of the court which issued the order or the decree.

This court, in *Estate of McGrorey, supra,* discussed the above rules and stated:

"Rule 7.1 of the Supreme Court Orphans' Court Rules provides that exceptions be filed as local rules shall prescribe. In the absence of a contrary local rule, exceptions to an adjudication of the orphans' court are authorized by Rule 1518 of the Pennsylvania Rules of Civil Procedure, which provides that any issues which could be raised on exception are waived if no exceptions are filed.

"Montgomery County has two rules relevant to when exceptions are authorized. Local rule 75.1 states:

" 'No exceptions shall be filed to orders or decrees entered in proceedings unless the right to except thereto is expressly conferred by act of assembly, by general rule, or by special order; and all decrees other than those to which exceptions are so allowed to be taken, shall be final and definitive.'

"Local rule 75.2 provides:

" 'An adjudication shall be confirmed absolutely as of course, unless written exceptions thereto are filed with

the clerk within ten (10) days after the date of the filing of the adjudication. However, such exceptions shall in no event raise questions which could have been but were not raised by objections to the account or by claims presented at the audit of the account.' " [1]

"Reading the two rules together, it is apparent that exceptions to the nisi adjudication were authorized in this case. The rules distinguish between orders and decrees, to which exceptions may not be filed unless the right to except is expressly conferred, and adjudications, to which exceptions are authorized within ten days of filing. Here, the decree of the orphans' court was expressly designated an 'adjudication confirmed Nisi.' A nisi adjudication, by its terms, cannot be a final order or decree as contemplated by rule 75.1.

"Since the nisi adjudication was not a final order or decree, exceptions thereto were authorized pursuant to Pa.R.Civ.P. 1518 and Sup.Ct.O.C.Rule 3.1. When exceptions were not filed within ten days, the nisi adjudication became final pursuant to rule 75.2 and, therefore, appealable. However, all the issues now presented by appellant were raised in her objections to the account prior to the nisi adjudication and, therefore, could have been the subject of exceptions pursuant to rule 75.2. Having failed to file exceptions, as permitted by local rule, the issues here presented by appellant are deemed waived and may not be argued on appeal. Sup.Ct.O.C.Rule 3.1 & Pa.R.Civ.P. 1518; *Estate of Stanley*, 470 Pa. 483, 368 A.2d 1259 (1977); *Estate of Humphrey*, 470 Pa. 487, 368 A.2d 1261 (1977); *Estate of Banes*, 461 Pa. 203, 336 A.2d 248 (1975); *Estate of Rothermel*, 461 Pa. 1, 334 A.2d 603 (1975); *Logan v. Cherrie*, 444 Pa. 555, 282 A.2d 236 (1971)."

1. Montgomery County local rules have been renumbered. In *McGrorey*, the order or decree appealed was designated as an "adjudication confirmed nisi." The court, therefore, reasoned that all nisi adjudications are subject to the filing of exceptions and the failure to file exceptions converts the nisi adjudication into a final adjudication but precludes the raising of any issues which could have been raised by exception in the Orphans' Court.

In the instant case the September 8, 1976, adjudication was called "opinion and decree sur petition." Therefore, we must determine whether that "opinion and decree" is the type of order to which exceptions must be filed to preserve issues for appellate review. Our rules and *McGrorey, supra,* make clear that local rules are given precedent in determining the requirement of filing exceptions.

The Montgomery County rules prohibit the filing of exceptions except where statute, general rule of court or special order of court confer the right to file exceptions. The first and third options are not applicable to this case as there are no statutes or special orders requiring the filing of exceptions. It is urged that 3.1 Pa.O.C.Rules and 1518 of the Rules of Civil Procedure are "general rules" applicable to this type of order and, therefore, require the filing of exceptions. We do not agree. As stated above: "In the absence of a contrary local rule, exceptions to an adjudication of the orphans' court are authorized by Rule 1518 of Pa.R.Civ.P. [Pennsylvania Rules of Civil Procedure]." *McGrorey, supra.*

To call every untitled order "nisi" and within 3.1 Pa.O.C. and 1518 Pa.R.Civ.P. would frustrate Pa.O.C.Rule 7.1 and this court's clear mandate that local rules should govern orphans' court matters. It is necessary to clarify the nature of the "order" to determine whether any exceptions were necessary. In this case, the order determined (1) the joint tenancy with right of survivorship was not severed by the mortgage and, therefore, not includable in the estate of William Kotz and (2) the widow could elect against the husband's share of the joint tenancy. Unlike the nisi confirmation in *McGrorey,* no further action by the orphans' court is contemplated concerning these issues. The only future action is the attempted enforcement by Mary Kotz as to her right to elect.

Under the circumstances of this case, we believe the September 8 order was not a nisi adjudication in nature and, therefore, the local rule of Montgomery County prohibits the filing of exceptions.

Having determined the order to be final, we must also conclude all issues are preserved for appellate review.

### C. Merits

■ Virginia Kotz argues that the court below erred in permitting the widow to elect against real property owned by Virginia Kotz and the decedent as joint tenants with right of survivorship, which property was purchased eight years prior to the decedent's marriage.

The facts are: Decedent, Virginia Kotz, and Lydia Kotz, their mother, were joint owners of real estate in Montgomery County from 1948 to 1959. The mother died in 1958. The decedent and his sister sold this piece of property and used the proceeds to purchase the Warminster Road property presently in dispute. The title to this property was a joint tenancy with right of survivorship. At the time of the purchase, decedent and his sister took a mortgage on the property. The mortgage was a joint one with both decedent and his sister being obligated. The record also establishes that decedent was the only person with any income sufficient to make the mortgage payments. After the death of William Kotz, the mortgage was paid off by a mortgage insurance policy, as well as money from an insurance policy on decedent's life, with his sister as beneficiary, and additional money paid by Virginia Kotz. On December 19, 1975, Mary Kotz was appointed administratrix of the estate of her husband. On August 26, 1976, Mary Kotz filed a petition for a citation seeking the inclusion of her husband's portion of the Warminster Road property in his estate or that she be allowed to elect against that conveyance.

The orphans' court determined that the property was not included in the estate of William Kotz but that Mary Kotz could take against the "conveyance" pursuant to § 6111 of the Probate Code, 20 Pa.C.S.A. § 6111, which provides:

"(a) In general.—A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof, shall, at the election of his surviving spouse, be treated as

a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved, but the right of the surviving spouse shall be subject to the rights of any income beneficiary whose interest in income becomes vested in enjoyment prior to the death of the conveyor. The provisions of this subsection shall not apply to any contract of life insurance purchased by a decedent, whether payable in trust or otherwise, not to employee death benefits described in section 6108 of this code (relating to designation of beneficiaries of insurance or employee death benefits not testamentary), whether payable in trust or otherwise."

Section 6101 defines:

" 'Conveyance.' Means an act by which it is intended to create an interest in real or personal property whether the act is intended to have inter vivos or testamentary operation. Except as used in section 6111 of this code (relating to conveyances to defeat marital rights), it shall include an act by which a power of appointment whenever given is exercised." Act of June 30, 1972, P.L. 508, No. 164, § 2, eff. July 1, 1972.

Mary Kotz, the surviving spouse, successfully argued in orphans' court that when William Kotz purchased the Warminster property with his sister as joint tenants with right of survivorship in 1959, that purchase was an "act which created an interest in real property" and that the husband retained "a power of appointment by will, or a power of revocation or consumption over the principal," thereby allowing her to take against the property.

Virginia Kotz argues that the orphans' court erred in applying § 6111 to property purchased by a husband or wife prior to his or her marriage.

The orphans' court treated the purchase of the Warminster property by decedent and his sister as an "act by which it is intended to create an interest in real or personal property whether the act is intended to have inter vivos or testamentary operation." § 6101 supra.

Replacing the work "conveyance" in § 6111 with its definition the provision reads: "an act intended to create an interest in real or personal property by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof. . . ."

Section 6111 of the Probate Code is a re-enactment of § 11 of the Estates Act, Act of April 24, 1947, P.L. 100, § 10; June 30, 1972, P.L. 508, No. 164, § 3, eff. July 1, 1972, formerly 20 P.S. § 301.11.[2] The definition of "conveyance" is also a re-enactment of § 1 of the Estates Act of 1947, *supra*, formerly 20 P.S. § 301.1.[3]

This court, in *Schwartz Estate*, 449 Pa. 112, 295 A.2d 600 (1972), stated the legislative intent of § 11 of the Estates Act of 1947:

". . . The obvious philosophy of Section 11 of the Estates Act of 1947 as well as the common law, *Montague Estate*, 403 Pa. 558, 170 A.2d 103 (1961), is to prevent a husband from indirectly disinheriting his wife through an inter vivos transfer while retaining control over the use and enjoyment of the property during his lifetime. As noted by the official comments to Section 11 of the Estates Act of 1947, the section preserves for the surviving spouse the right to share in the decedent's assets 'where the decedent has retained *important rights of ownership* at death.' (Emphasis added [in *Schwartz Es-*

2. "(a) In general.—A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof, shall, at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved, but the right of the surviving spouse shall be subject to the rights of any income beneficiary whose interest in income becomes vested in enjoyment prior to the death of the conveyor. The provisions of this subsection shall not apply to any contract of life insurance purchased by a decedent, whether payable in trust or otherwise.

3. "(2) 'Conveyance' Means an act by which it is intended to create an interest in real or personal property whether the act is intended to have inter vivos or testamentary operation. Except as used in Section 6111, it shall include an act by which a power of appointment, whenever given, is exercised."

tate]). In such cases the law treats the husband as the owner of the property during his lifetime. If, however, the husband makes an outright gift which divests him of any possible interest so that the property can no longer inure to his benefit, nothing in our case law or statutes would allow his widow to claim any part of this property."

The dissenting opinion in *Schwartz*, while disagreeing with the majority's application of § 11 to the facts of that case, copiously discussed the legislative intent behind § 11 of the Estates Act of 1947:

"The Joint State Government Commission which drafted the Estates Act of 1947 explained the purpose of Section 11: 'This section preserves for the surviving spouse the right to share in the decedent's assets where the decedent has retained important rights of ownership at death. Rights of the surviving spouse in such circumstances have been recognized in other states. . . . However, Pennsylvania has given little opportunity to the surviving spouse to share when legal title has passed from the decedent prior to death. . . . Indeed, the situation in Pennsylvania has been such that it was stated correctly that "It is only the stupid husband, who, against his wishes, would be forced to allow his wife to share in his personalty". . . . ' Act of April 24, 1947, P.L. 100, § 11, as amended, 20 P.S. § 301.11 (Commissions' Comment) (citations omitted).

"In *Pengelly Estate*, 374 Pa. 358, 97 A.2d 844 (1953), this Court observed that 'the Act [Section 11] is confirmatory of a long existing public policy of the Commonwealth to protect the rights of widows.' Id., 374 Pa. at 369, 97 A.2d at 849. In *Behan Estate*, 399 Pa. 314, 160 A.2d 209 (1960), we held that an inter vivos trust which retains for the husband a special testamentary power of appointment is subject to Section 11, and there fully explored and explained the legislative purpose of Section 11: 'The mischief to be remedied and the reason for the new law are clear. Wives are being unfairly deprived of a share in their husband's personal property by a *transparent trust*

*device which permitted a husband to retain control of his property,* and at the same time legally deprive his wife of her just marital rights therein.' Id. at 318–19, 160 A.2d at 213 (emphasis added). In addition, we also observed: 'It is clear that Section 11 was passed to prevent a husband, intentionally or otherwise, from defrauding his surviving wife of her marital rights by an inter vivos trust which contained a power of revocation or consumption or a power of general or special appointment by will. For centuries the law has sought to protect a wife and preserve for her some share in her husband's property—the ancient right of dower, and more recently intestate Acts and Wills Acts. Pennsylvania has been a laggard in this field. However, in the field of Wills, Trusts and Decedents' Estates, *a wife's rights have always been recognized as higher than rights of children,* or relatives or friends or charities or legatees.' Id., 399 Pa. at 321, 160 A.2d at 214 (emphasis in original); cf. *Montague Estate,* 403 Pa. 558, 560–61, 170 A.2d 103, 105 (1961)." [4]

This court has not had the opportunity to determine the applicability of § 11 of the Estate Act or its successor, § 6111 of the Probate Code, to the facts of a premarital conveyance.[5]

This court made clear in *Schwartz Estate, supra,* and *Behan Estate, supra,* that the legislative intent and purpose was to protect spouses from being denied just shares in their deceased husband's or wife's estates. To effectuate that purpose, the legislature permits the surviving spouse to treat as testamentary any property which the other spouse by act "intended to create an interest in real or personal property,"

---

**4.** See *Behan's Estate, supra,* 399 Pa., pp. 317–321, 160 A.2d 209, for a copious discussion of the legislative intent of § 11 of the Estate Act.

**5.** See *Schwartz Estate,* 449 Pa. 112, 295 A.2d 600; *Huested Estate,* 403 Pa. 185, 169 A.2d 57; *Behans Estate,* 399 Pa. 314, 160 A.2d 209; *Horstman Estate,* 398 Pa. 506, 159 A.2d 514; *Henderson Estate,* 395 Pa. 215, 149 A.2d 892; *Brown Estate,* 384 Pa. 99, 119 A.2d 513; *Latolla's Estate,* 380 Pa. 391, 110 A.2d 380; *Pengelly Estate,* 374 Pa. 358, 97 A.2d 844; *McKean's Estate,* 366 Pa. 192, 77 A.2d 447.

if such spouse retains "a power of appointment by will or a power of revocation or consumption over the principal."

Although the purchase of the Warminster Road property by the decedent and his sister would appear to mechanically fit the statutory language, we do not think § 6111 applies to premarital conveyances.

Section 3 of the Statutory Construction Act of 1972 (Act of November 25, 1970, P.L. 707, No. 230, added December 6, 1972, No. 290, § 3, imd effective), 1 Pa.C.S.A. § 1924 provides:

> "The title and preamble of a statute may be considered in the construction thereof. Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer. Exceptions expressed in a statute shall be construed to exclude all others. *The headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may by used to aid in the construction thereof."* (Emphasis added.)

While not controlling, the heading of § 6111 is "Conveyances to Defeat Marital Rights." Using the title as an aid to determine the meaning of § 6111, we believe the statute's aim is to prevent "conveyances" during marriage which deprive the spouse of an interest in property and not transactions that occur eight years prior to marriage. When the purchase of the Warminster Road property occurred, it did not impinge or defeat any one's marital rights.

The proper interpretation of § 6111 requires that we limit its application to "conveyances" during marriage. This limiting interpretation does not negate or change this court's previous decisions and expressions of strong support for surviving spouses' rights, rather it continues that strong policy but recognizes instances where that policy has no application.

The decedent created no interest in property which defeated any marital rights of his surviving spouse.

Order and decree at No. 677 January Term, 1977 are reversed.

II.   No. 691—Appeal of Mary A. Kotz

Appellant, Mary Kotz, argues that the court below erred in failing to sever the joint tenancy with right of survivorship that existed between Virginia Kotz and decedent, William Kotz.  The basis of appellant's argument is at the time of the purchase of the Warminster Road property, Virginia and William Kotz executed a mortgage for the purchase price of the property.  It is argued the execution of this mortgage destroyed one of the four "unities" necessary for a joint tenancy with right of survivorship, thereby creating at the time of purchase a tenancy in common.

In *Cochrane's Estate*, 342 Pa. 109, 111, 20 A.2d 305 (1941): ".   .   .   The interests of joint tenants are equal.  They own the half or part and the whole, per my et per tout. There is a unity of interest, title, time and possession: *Madden v. Gosztonyi Savings & Trust Co.*, 331 Pa. 476, 200 A. 624;  *Walker's Est.*, 340 Pa. 13, 16 A.2d 28   .   .   .."

A commentator stated:

".   .   .   Blackstone, in a frequently quoted passage, described this quality as a four fold unity: 'the unity of interest, the unity of title, the unity of time and the unity of possession;  or in other words, joint tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same possession.'"  (Footnotes omitted.)  Moynihan; Introduction to the Law of Real Property 217 (1962).

The above definition by *Blackstone*, as applied to this case, clearly demonstrates decedent and his sister had the same interest in the property, they received that interest by the same conveyance, it commenced at the same time, and was the same possession.

The mortgage by the joint tenants with right of survivorship does not destroy any of the "unities" and it contrasts to the unilateral actions of one tenant this Court has deemed sufficient to destroy the necessary unities.  *Davidson's Lessee v. Heydon*, 2 Yeates 459 (1799);  *Simpson's Lessee v.*

*Ammons*, 1 Binn. 175 (1806); *Starger v. Epler*, 382 Pa. 411, 115 A.2d 197 (1955); *Sheridan v. Lucey*, 395 Pa. 306, 149 A.2d 444 (1959); *In re Laredon's Estate*, 439 Pa. 535, 266 A.2d 763 (1970).

Order and decree at No. 677 January Term, 1977 are reversed.

Order and decree at No. 691 January Term, 1977 are affirmed.

Each party to bear own costs.

ROBERTS and NIX, JJ., join in the opinion of the court and file separate concurring opinions.

MANDERINO, J., concurs in the result.

ROBERTS, Justice, concurring.

I join the opinion of the Court. I write only to note that 20 Pa. C.S.A. § 6111 has since been repealed by the Act of April 18, 1978, P.L. 42, § 7, and a new election scheme has been adopted by the Legislature, see, 20 Pa. C.S.A. § 2201 et seq. The new scheme includes a provision for election against

> Property conveyed by the decedent *during the marriage* to himself and another or others with right of survivorship to the extent of any interest in the property that the decedent had the power at the time of his death unilaterally to convey absolutely or in fee.

20 Pa. C.S.A. § 2203(a)(4) (emphasis added). Although this case presents a different factual situation, the 1978 provision, where applicable, clearly requires the same result we reach today under § 6111.

NIX, Justice, concurring.

I am in full accord with the result reached by the Opinion of the Court but wish to indicate that I do not accept the Opinion's implication that the result would have been otherwise had the marriage preceded the creation of the joint tenancy. Today's Opinion holds that a pre-marital creation of a joint tenancy does not create any rights in favor of a

person who subsequently marries one of the joint tenants, concerning the property which is the subject of the joint tenancy.

The question of whether the surviving spouse may elect against a joint tenancy created during marriage by the deceased spouse and a third party was explicitly reserved by this Court in *Righter v. Righter*, 442 Pa. 428, 275 A.2d 4 (1971). Although that Court indicated that *Hines Estate*, 44 Pa.D.&C.2d 401, 409 (1968) decided this issue, the discussion in *Hines* is devoid of authority or analysis and is thus neither binding nor an impressive precedent.